UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACQUELINE KRETZMON,

                                    Plaintiff,

        v.                                          DECISION AND ORDER
                                                    11-CV–0704

ERIE COUNTY, TIMOTHY B.
HOWARD, BRIAN D. DOYLE,
MICHAEL REARDON, ROBERT KOCH,
BARBARA LEARY

                                    Defendants.

## INTRODUCTION

        Plaintiff Jacqueline Kretzmon ("Plaintiff" or "Kretzmon"), a lieutenant in the

Erie County Sheriff's Office, commenced the instant employment discrimination

and civil rights action against her employer, Erie County (the "County") as well as

individual defendants Timothy Howard, sheriff of Erie County ("Sheriff Howard"),

Brian Doyle, former undersheriff of Erie County ("Undersheriff Doyle"), Michael

Reardon, chief of Erie County Sheriff's Office ("Chief Reardon"), Robert Koch,

assistant superintendent of Erie County Sheriff's Office ("Superintendent Koch"),

and Barbara Leary, a former first deputy of the Erie County Sheriff's Office

("Deputy Leary") (collectively referred to as "Defendants").

        Plaintiff asserts claims under Title VII of the Civil Right Act of 1964, 42

U.S.C. §2000e, *et seq*. ("Title VII") and 42 U.S.C. §1983 ("Section 1983").

Plaintiff also brings state law claims for violations of Section 740 of the New York Labor Law and Section 75-b of the New York Civil Service Law as well as breach of contract.

Defendants have moved to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion is granted in part and denied in part.

## PROCEDURAL HISTORY

Plaintiff filed her initial complaint on August 24, 2011.  On September 19, 2011, the County filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff amended her complaint once as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(2).  On October 25, 2011, the County filed a motion to dismiss the amended complaint again pursuant to Federal Rule of Civil Procedure 12(b)(6).

The parties appeared for a status conference with the Court on February 6, 2012.  At that time, it was agreed that Plaintiff would be permitted to file a second amended complaint, and the parties filed a stipulation to that effect.  After a series of stipulations extending Defendants' time to answer or move against the second amended complaint, Defendants filed the instant motion to dismiss on May 29, 2012.  Plaintiff filed a memorandum in opposition on July 16, 2012, Defendants submitted a response on July 31, 2012, and the Court deemed the matter submitted.  Defendants argue that the allegations in Plaintiff's complaint, taken as

true, fail to assert any viable federal claim upon which relief may be granted.[1]

## ALLEGED FACTS

Lieutenant Kretzmon was hired by the Erie County Sheriff's Office on or around April 30, 1990.[2] She is currently in charge of Records and Booking at the Erie County Holding Center.

In November of 2007, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") alleging that the County had subjected her to sexual harassment, employment discrimination, and retaliation. Shortly thereafter, Plaintiff and the County entered into a private settlement resolving the complaint. The settlement agreement provided that in exchange for Plaintiff's withdrawal of her complaint, Defendant would investigate certain sexually offensive remarks made to Plaintiff by a co-worker. It was also agreed that Michael Reardon, a chief within the Erie County Sheriff's Office, would no longer

---

[1]Plaintiff argues that Defendants are precluded from making a second motion to dismiss pursuant to the "omnibus requirements" of Federal Rule of Civil Procedure ("FRCP") 12(g). However, a motion to dismiss under FRCP 12(b)(6) falls under an exception to the omnibus motion rule in FRCP 12(g)(2). Because that exception is clear and prevents a plaintiff from intentionally filing a defective complaint in order to prompt a motion to dismiss in the expectation that a later-filed amended pleading will be beyond the Court's scrutiny under Rule 12(b)(6), Plaintiff's counsel's argument is troubling to the Court. Moreover, some of the individual Defendants named in the second amended complaint were not named in Plaintiff's previous complaint, making the instant motion the first motion to dismiss asserted by those Defendants. Therefore, the instant motion to dismiss is procedurally correct and will be considered on its merits.

[2]The facts set forth herein reflect the allegations in Plaintiff's second amended complaint. All well-pleaded allegations are accepted as true for purposes of this motion to dismiss, but do not constitute the findings of the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

serve as Plaintiff's supervisor, nor would he be placed within her chain of command.

Plaintiff alleges that the County failed to comply with the terms of the settlement agreement. The County never investigated the offensive comments and continued to assign Chief Reardon to supervise Plaintiff. In February of 2009, Plaintiff wrote two letters to the County, one of which was addressed to an attorney for the County, complaining that Reardon had been placed in her chain of command, in violation of the settlement agreement. In May 2009, Plaintiff sent an email to the County, again complaining that Reardon was supervising her. At that time Plaintiff also complained that Reardon was using his position within her chain of command to harass and retaliate against her.

Moreover, Plaintiff contends that since filing her DHR complaint in 2007 she was subject to continuous "low-grade" harassment, and that this harassment increased "in scope and magnitude" beginning in early 2009. Plaintiff devotes over twenty pages of her second amended complaint, or approximately 100 paragraphs, to describing the alleged harassment, discrimination and retaliation. The Court will provide a general summary of Plaintiff's allegations but will not repeat all of Plaintiff's allegations in detail herein.

Some of the ongoing incidents of discrimination and retaliation alleged by Plaintiff include the following: (1) she suffered unfavorable changes in her job duties and scheduling; (2) she was consistently forced to work "double time" and

was assigned a disproportionately large amount of work compared to other officers; (3) she was repeatedly given menial tasks that were typically assigned to lower ranking officers; (4) she suffered reprimands and negative comments about her job performance; (5) she was not invited to participate in training or seminars that would have been helpful to her career development; (6) she was forced to move out of her office and into a smaller and less desirable office; (7) she was made to work numerous shifts alone while co-workers were assigned partners, which prevented her from taking time off; and (8) she was given orders from junior officers.

Plaintiff also alleges specific instances of discrimination and harassment. Specifically, in 2009 some Erie County Sheriff's Office employees started an online blog called "Stop Howard 2009." The blog was created in spite of the County's policy prohibiting this type of online posting by employees. The blog contained photos and comments about supervisors in the Erie County Sheriff's Office and much of the commentary was graphic, derogatory and offensive. In the fall of 2009 employees began posting comments on the blog referring to Plaintiff as "pig", "fuck-up", "a shit bag", "a shit deputy, a horrible sergeant, and a scum bag Lt.", and "a pint size piece of shit" who "can't have more than 3 friends". Plaintiff was referred to as having "balls..and a penis", was called a "cancer" to the department, and was called the "the worst person, or dog, that has ever lived." Plaintiff complained about these comments and the blog in general. She

alleges, however, that the County took no steps to investigate or correct the conduct.[3]

Plaintiff also contends that she faced unwarranted disciplinary proceedings for two incidents that she was not responsible for.  Specifically, she alleges that in July of 2009 she faced a disciplinary hearing as a result of an incident involving the rape of an inmate by another inmate.  In November 2009 she faced another disciplinary hearing due to an attempted escape by an inmate.  Plaintiff alleges that she was consistently threatened with disciplinary action based upon these incidents, even after the hearings were completed.  The complaint does not provide details regarding the outcome of either hearing or what, if any, disciplinary action was taken against Plaintiff.

In or around January of 2010, Plaintiff reported to the Erie County Sheriff's Office Professional Standards Division that three of her fellow officers had violently abused an inmate.  An investigation was conducted and Jonathan Weir, one of the officers involved, was terminated.  An arbitration addressing Officer Weir's termination was held on September 8, 2010.  On that same day, a decapitated rat was placed in Plaintiff's driveway.  Plaintiff states that the County investigated the incident and determined that Officer Weir placed the decapitated

_____

[3]Plaintiff informed Deputy Superintendent Leary that she found a thumbnail drive containing entries from the blog on her co-worker, Lieutenant Kibler's, computer. Plaintiff was later informed that the County could not determine who posted on the blog but that they would block the posting on its server.  No further action was taken and the County did not investigate Lieutenant Kibler's participation in the blog.

rat in Plaintiff's driveway as a form of witness tampering. However, based upon the allegations in the second amended complaint, it appears that Officer Weir was eventually returned to work and no further investigation or disciplinary action resulted from this incident.

In May of 2010, Plaintiff made a formal complaint regarding the lack of a television in the female employee's break room. Shortly thereafter, an Erie County Sheriff's Office employee wrote "Fire Kretzmon" in permanent marker near the telephone in the lunch room. Plaintiff filed a complaint regarding the incident but the County's investigation failed to identify the offending employee. In July of 2010 Plaintiff filed a second complaint stating that the women's break-room still did not have a television even though the men's break-room did. Plaintiff states that on July 15, 2010, the "Sheriff filed a complaint with the EEO on [her] behalf." Plaintiff alleges that on that same day she "sent a letter to the Defendant explaining the harassment, retaliation, and hostile work environment to which the defendant was subjecting her." Plaintiff does not provide any additional details regarding the substance or outcome of either the EEO complaint or her letter.

On August 19, 2010 Plaintiff filed a complaint with the DHR alleging age, sex and sexual orientation discrimination and retaliation. Her complaint was cross filed with the Equal Employment Opportunity Commission.

In September 2010, Plaintiff found a sexually explicit picture of a woman in

one of her work binders.  Although Plaintiff complained about the incident,

nothing was done to investigate it.

On November 10, 2010, Plaintiff overheard a co-worker, Lieutenant Harris,

state: "I don't know what would be better...if she was demoted or fired or maybe

she'll just die."  In March of 2011 Plaintiff and Lieutenant Harris exchanged emails

regarding a particular inmate.  As a result of the exchange, Harris became angry

and yelled at Plaintiff to: "keep your smart ass comments to yourself."  Plaintiff

complained regarding Harris' comments.  In August of 2011 the Erie County

Holding Center blog, which Plaintiff had previously complained of, contained a

poll that asked whether Plaintiff should be fired.  The poll was accompanied by a

photo of a dead rat caught in a trap, which was labeled "aka>>> JK THE RAT

FUCK."

## **DISCUSSION**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations

in the complaint as true and draw inferences from those allegations in the light

most favorable to the plaintiff."  *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103,

109 (2d Cir. 2005).  A complaint should be dismissed only if it fails to contain

enough allegations of fact to state a claim for relief that is "plausible on its face."

*Bell Atl. Corp. V. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  In considering a motion to dismiss, "the issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2011).

Here, Plaintiff's causes of action include retaliation in violation of Title VII, Section 740 of the New York State Labor Law, and Section 75-b of the New York State Civil Service Law; deprivation of constitutional rights pursuant to Section 1983; and breach of contract.

### 1. *Retaliation under Title VII*

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a). The anti-retaliation provision of Title VII forbids an employer from "discriminating against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted or participated in" a Title VII proceeding or investigation. *Id*. at §2000e-3(a).

The burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973), and used in claims of employment discrimination, is also applied to retaliation claims brought pursuant to Title VII. *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003). In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she participated in an activity protected by Title VII; (2) the employer was aware of her participation

in the protected activity; (3) the employer subjected her to a materially adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). At the pleading stage, plaintiff "need not establish a *prima facie* case of discrimination, but must nonetheless allege evidence stating a plausible claim of retaliation." *Stewart v. The City of New York*, 2012 U.S. Dist. LEXIS 96998 (SDNY 2012).

Plaintiff's complaint does not specifically state which Defendants she alleges to have violated Title VII. Individuals are not subject to liability under Title VII. *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d. Cir. 1995) ("Individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."). Thus, to the extent that Plaintiff is attempting to assert a Title VII claim against any of the individual Defendants named in the caption of the complaint, those claims are dismissed. Plaintiff's retaliation claim will be analyzed with respect to Defendant Erie County only.[4]

With respect to the first element of a *prima facie* retaliation claim, Plaintiff

---

[4]The filing of the instant complaint is not the first time that Plaintiff's counsel has filed a complaint, with this Court, asserting numerous causes of action against multiple defendants, without any clear indication as to which claims apply to which defendants. *See Shiner v. State University of New York, et al*, 11-cv-1024, pg. 2, footnote 1. Plaintiff's counsel is cautioned that, going forward, the Court will not look favorably on complaints which fail to properly and clearly identify which causes of action are being asserted as to which defendants.

engaged in multiple protected activities including: (1) her 2007 DHR complaint;
(2) her complaints that Defendant had breached the 2008 settlement agreement
by placing Chief Reardon in her chain of command and failing to investigate
sexually offensive comments made by Plaintiff's co-worker; and (3) her August
2010 DHR complaint.  *See Russo v. Este Lauder Corp*., 856 F. Supp. 2d 437
(EDNY 2012) (plaintiff participated in protected activity by being part of a 2003
employment discrimination lawsuit against Este Lauder); *Cifra v. Gen. Elec. Co.*,
252 F.3d 205, 2010-11, 216 (2d. Cir. 2001) (filing of discrimination claims is
protected activity under Title VII).  These actions certainly constitute protected
activity pursuant to Title VII.

Plaintiff has cited various additional complaints which she contends also
constitute protected activity under Title VII.   "Protected activity" refers to a broad
range of actions taken to protest or oppose discrimination.  *Cruz v. Coah Stores,
Inc*., 202 F.3d 560, 566 (2d Cir. 2000).  A protected activity does not have to "rise
to the level of a formal complaint" and includes complaints to management,
writing critical letters and expressing support for co-workers.  *Sumner v. United
States Postal Serv*., 899 F.2d 203, 209 (2d Cir. 1990).  Also importantly, an
employee does not have to demonstrate that her charge or complaint would
ultimately be successful or actionable in order to constitute protected activity.
*See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("a plaintiff may
prevail on a claim for retaliation even when the underlying conduct complained of

was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.")

However, while complaints about conduct clearly prohibited by Title VII need not mention discrimination or use particular language, "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."  *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch*., LLC, 470 F. Supp. 2d 345, 357 (SDNY 2007).  Thus, an employee's general complaint to an employer about unfair treatment in the workplace is insufficient to constitute protected activity.  *See Ezekwo v. New York City Health & Hosps. Corp*., 940 F.2d 775, 781 (2d Cir. 1991) ("The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally.")

Plaintiff states that she made the following complaints regarding her treatment at work in the fall of 2009 and throughout 2010: (1) complaints regarding the derogatory and inappropriate comments posted about her on the "Stop Howard" blog in the fall of 2009; (2) her requests for "equal accommodation" in the men's and women's break-rooms; (3) complaints regarding Lieutenant Harris' email stating "I'm sick of your smart ass comments"; and (4) her July 15, 2010 letter to Defendant "explaining the harassment,

12

retaliation, and hostile work environment to which the Defendant was subjecting her."

Plaintiff's July 2010 letter specifically referenced harassment and retaliation.  In addition, she complained that the comments on the "Stop Howard" blog were "sexually derogatory" and she complained, repeatedly, about the lack of equal accommodations in the men's and women's break-rooms.  Considering the language and context of these complaints, and taking into account Plaintiff's prior protected activity with respect to the SDHR charge and subsequent settlement agreement, the Court finds that these complaints are sufficient to clarify to the County that she was complaining about unequal treatment on the basis of sex, harassment, or retaliation.  While Plaintiff's complaint regarding Lieutenant Harris' email may have been a general complaint about workplace treatment rather than a discrimination complaint, she has alleged numerous other protected activities sufficient to establish the first element of her *prima facie* case.

With respect to the second element, general knowledge of protected activity is sufficient to make out a *prima facie* case.  *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336 (SDNY 2006); *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the Defendant engaged in protected activity."); *Suarez v. City of New York*, 2012 U.S. Dist. LEXIS 144918 (SDNY 2012) (a plaintiff needs to show

that individual decision-makers within the organization knew about the protected activity in order to establish a *prima facie* case).

Clearly, the County knew of Plaintiff's 2007 and 2010 DHR complaints and was a signatory to the 2008 settlement agreement. Moreover, Plaintiff complained repeatedly to County employees, including the County attorney, that the settlement agreement had been breached and that she was being treated unfairly. With respect to the litany of complaints and grievances made by Plainitff throughout 2009 and 2010, Plaintiff alleges that she complained to supervisors and wrote letters to the Erie County Sheriff. These allegations are enough to satisfy the general knowledge requirement of a *prima facie* case.

With respect to the third element, Plaintiff must establish that the County subjected her to a materially adverse employment action.[5] To constitute an adverse action for a retaliation claim, the allegedly retaliatory action must be "materially adverse". *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 20 (2d Cir. 2006). The Supreme Court has concluded that unlike the substantive discrimination provisions, the anti-retaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of

_____

[5]Title VII requires claimants to file a charge of discrimination or retaliation with the Equal Employment Opportunity Commission within 300 days of the discriminary or retaliatory act. *See* 42 USC § 2000e-5(e)(1); *Glaser v. Fulton-Montgomery Community College*, 50 Appx. 17 (2d Cir. 2002) (a Title VII claim is only actionable with respect to incidents that occur within 300 days of filing an administrative complaint). Plaintiff filed her administrative complaint on August 19, 2010. Therefore, only alleged retaliatory actions that took place on or after October 23, 2009 will be considered by the Court.

employment. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 64 (2006). Thus, with respect to a retaliation claim, a materially adverse employment action is any action or actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57; *Platt v. The Incorporated Village of Southampton*, 391 Fed. Appx. 62 (2d. Cir. 2010).

In *Burlington*, the Supreme Court found that depending on the circumstances of the case, a reassignment of job duties could constitute retaliatory action. 548 U.S. at 70-71 ("Almost every job category involves some responsibilities and duties that are less desirable than others...common sense suggests that a good way to discourage an employee..from bringing discrimination charges would be to insist that she spend more time performing the arduous duties and less time performing those that are easier or more agreeable"). The Equal Employment Opportunity Commission has consistently found retaliatory work assignments to be a "classic" and "widely recognized" example of forbidden retaliation. *See* 2 EEOC 1991 Manual §614.7, pp 614-31 to 614-32. Additionally, courts in this circuit have found that denial of training opportunities and certain types of disciplinary actions can constitute retaliatory employment actions. *Stewart v. The City of New York*, 2012 U.S. Dist. LEXIS 96998 (SDNY 2012) ("denial of training can indeed be an adverse employment action, since officers with more training are more likely to be candidates for promotion"); *McPhatter v. Cribb*, 1999 U.S. App. LEXIS 34233 (2d. Cir. 1999)

(Second Circuit finding that plaintiff established a *prima facie* case of retaliation, where plaintiff received a series of notices of discipline, some of which resulted in disciplinary action, after engaging in protected activity).

Plaintiff alleges that after engaging in protected activity, the County retaliated against her by assigning her menial work, assigning her work through lower ranking officers, assigning her frequent "double duty" shifts, assigning her a disproportionate amount of work, forcing her to work without a partner, repeatedly threatening her with discipline and filing disciplinary charges against her, passing her over for training and other work opportunities, and forcing her to move out of her office and into a less desirable location. Plaintiff also alleges that demeaning and derogatory comments were posted about her on the "Stop Howard Blog", that "fire Kretzmon" was written in permanent marker in the lunchroom, and a decapitated rat was left on her driveway. She contends that despite her complaints, the County did not adequately investigate or resolve any of these incidents. The Court finds that these incidents, considered in their totality, would dissuade a reasonable employee from making or supporting a charge of discrimination. Therefore, Plaintiff has established the third element of her *prima facie* case.

With respect to the final element, proof of causation can be shown either through direct evidence of retaliatory animus or indirectly by showing that the protected activity was followed closely by discriminatory treatment or through

16

other circumstantial evidence. *Gordon v. N.Y. City Bd. Of Educ.*, 232 F.3d 111 (2d Cir. 2000). Plaintiff's 50 page complaint spans from November 2007, when she first filed an administrative charge, to August of 2011, when she filed the instant lawsuit. Some of the alleged instances of retaliation in the form of diminished job duties appear to have occurred within months of Plaintiff's protected activity, while other instances of alleged retaliation do not appear to have close temporal proximity to any of Plaintiff's protected activities. However, since Plaintiff engaged in protected activity on more than one occasion throughout the time period alleged in the complaint, and many of the alleged adverse actions occurred on a continuing basis in or around the time of Plaintiff's complaints, the Court finds that there is enough temporal proximity to establish a *prima facie* claim of retaliation.

The Court concludes Plaintiff has alleged sufficient facts to state a Title VII retaliation claim against Erie County. Defendants' motion to dismiss Plaintiff's claims under Title VII is denied.

> 2.  <u>Breach of Contract</u>

Plaintiff's second cause of action alleges breach of the settlement agreement entered into between Erie County and the Plaintiff in 2008. The elements of a breach of contract claim in New York are: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contact by the defendant; and (4) damages." *Eternity Global Master Fund Ltd.*

17

*v. Morgan Guaranty Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004). The statute of

limitations for a breach of contract claim is six years, and it begins running on the

date of breach. N.Y. CPLR §213(2); *Carvel v. Ross*, 2011 U.S. Dist. LEXIS

25203 (SDNY 2011).

According to the complaint, Section 2(a) of the settlement agreement

provides that "[Erie County] shall guarantee that for the duration of [Plaintiff's]

employment by [Erie County], [Plaintiff] and Michael Reardon, currently holding

the position of Chief, will not be assigned to positions placing them in direct chain

of command with each other". The settlement agreement also states that

Defendant Erie County will investigate Deputy Doxbeck's use of a sexually

explicit and derogatory term to refer to Plaintiff.

Plaintiff alleges that from February 6, 2009 through the present, the County

has continuously assigned Chief Reardon to Plaintiff's chain of command, in

violation of the settlement agreement. Plaintiff also alleges that the County failed

to investigate the comments made by Officer Doxbeck. The Court finds that

Plaintiff has pled sufficient facts to establish a breach of contract claim against

the County.[6]

---

[6]Again, Plaintiff's complaint fails to specify as to which Defendants the breach of contract claim applies. Based upon the allegations set forth in the complaint, the 2008 settlement agreement was between Plaintiff and Erie County only. Thus, to the extent that Plaintiff is attempting to assert her breach of contract claim against any of the individual Defendants, those claims are dismissed. *See Smith v. Fitzsimmons*, 180 A.D.2d 177 (App. Div. 1992) ("A breach of contract action must generally be predicated on privity or its equivalent.")

*3.*    *Section 740 of the New York State Labor Law*

Plaintiff's third cause of action alleges that the County engaged in a retaliatory personnel action in violation of Section 740 of the New York State Labor Law.  Specifically, Plaintiff alleges that she was retaliated against after disclosing to the Erie County Sheriff's Office Professional Standards Division, in January 2010, that three of her fellow officers had violently abused an inmate.

Section 740 of the New York State Labor Law, also known as the "Whistleblower Statute", prohibits an employer from taking "any retaliatory personnel action against an employee" for, *inter alia*, "disclosing to a supervisor or public body an illegal activity that constitutes a danger to the public health or safety, testifying to an investigating public body, or objecting to an illegal policy or practice."  N.Y. Lab. Law §740(2).  However, Section 740 of the New York State Labor Law does not apply to public employers.  *Dibiase v. Barber*, 2008 WL 4455601, *5 (EDNY 2008); *Tamayo v. City of New York*, 2004 WL 137198, *7 (SDNY 2004) (dismissing retaliation claim brought by city police detectives under Labor Law Section 740); *Markovic v. New York City Sch. Constr. Auth.*, 2002 U.S. Dist. LEXIS 241, at *12 (SDNY 2002) (Section 740 does not apply to public employers); *Balduzzi v. City of Syracuse*, 1997 U.S. Dist. LEXIS 1317, at *11 (NDNY 1997) ("Labor Law §740 pertains only to employees in the private sector and...its public employee counterpart is New York Civil Service Law §75-b.")

It is undisputed that Plaintiff, an employee of Erie County, is a public

employee.  Section 740 of the Labor Law does not apply to public employees such as Plaintiff.  Thus, her third cause of action will be dismissed.

    4.    *Section 75-b of the New York State Civil Service Law*

Plaintiff's fourth cause of action alleges retaliation in violation of Section 75-b of the New York State Civil Service Law.  Her Civil Service Law claim is premised upon the same facts alleged in her claim under Section 740 of the Labor Law, specifically her January 2010 complaint regarding her fellow officers' abuse of an inmate.

Section 75-b of the Civil Service Law prohibits a public employer from taking any disciplinary or adverse personnel action against an employee because the employee discloses information to a government body: "(1) regarding a violation of a law, rule or regulation which violation creates or presents a substantial and specific danger to the public health or safety; or (2) which the employee reasonably believes to be true and reasonably believes constitutes an improper government action."  NY Civ. Ser. Law §75-b(2).

A plaintiff pursing a claim under Section 75-b of the Civil Service Law must comply with the notice requirements of county law and general municipal law. *Dingle v. City of New York*, 728 F. Supp.2d 332, 348 (SDNY 2010).  Therefore, a plaintiff cannot bring an action against a county for personal injury or property damage unless the plaintiff serves a notice of claim pursuant to Section 50-e of the General Municipal Law within 90 days after the claim arises.  *See Sacha v.*

*Sedita*, 2012 WL 5207528 (WDNY 2012); NY Gen. Mun. Law §50-e(1)(a).  In addition, Section 52 of the New York County Law also requires notice pursuant to Section 50-e for any claim for damages against a "county, its officers, agents, servants, or employees."  *Id*.; *Dingle*, 728 F. Supp.2d at 348-49 ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim.")

Plaintiff acknowledges that she did not file a notice of claim in accordance with Section 52 of the New York County Law or Section 50-e of the General Municipal Law.  However, she relies on *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1234 (SDNY 2003), and argues that a notice of claim is not required where a plaintiff seeks to vindicate a public right or interest.  Plaintiff's reliance on *Atkins* is misplaced.  In *Atkins*, a group of inmates brought various claims against the County of Orange, including violations of the New York Corrections Law. Plaintiffs argued that no notice of claim was required because they sought to vindicate a public interest, namely the inhumane mental health treatment at the jail.  The Southern District of New York rejected this argument.  The court found that while vindication of a public right is an exception to the notice of claim requirement, plaintiff inmates were seeking redress of individual injuries and therefore the exception did not apply to them.  *Atkins*, 251 F. Supp. 2d at 1234-35; *see also Mills v. County of Monroe*, 59 N.Y.2d 307 (1983).

Similarly, in *Mills v. County of Monroe*, the New York State Court of Appeals held that the vindication of a public right exception to the notice of claim requirement did not apply where a plaintiff's civil rights claim resulted from her opposition to the county's discriminatory practices and the relief she sought was money damages for her loss of wages and damage to her reputation. 59 N.Y.2d 307 (1983). The Court of Appeals reasoned that "[i]nasmuch as the disposition of plaintiff's claims was not intended to nor could it directly affect or vindicate the rights of others, her action is properly characterized as one seeking enforcement of private rights." *Id*. at 312. Courts in this circuit have also held that the vindication of public right exception does not apply when plaintiffs are seeking money damages for the sole purpose of redressing their individual injuries. *See Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (EDNY 1997) (dismissing plaintiff's complaint because it addressed only plaintiff's individual injuries and the relief requested only benefitted plaintiff); *Brown v. Massena Memorial*, 2000 U.S. Dist. LEXIS 4819 (NDNY 2000) (dismissing plaintiff's claim because it was not of greater value to the public than any other award to a civil rights plaintiff).

While Plaintiff may have been complaining about the treatment of an inmate, the purpose of her action is to vindicate her individual employment rights. The damages and relief she seeks benefit her only, and will serve no greater value to the public nor will they redress or correct a public right. For these reasons, the public right exception to the notice of claim requirement does not

apply here.  Since Plaintiff has not filed a notice of claim in accordance with Section 52 of the New York County Law or Section 50-e of the General Municipal Law, she is barred from now pursuing a claim against the County under Section 75-b of the New York Civil Service Law.  Her fourth cause of action is dismissed.

     *5.*     <u>*Section 1983 as to the County*</u>

In her fifth cause of action, Plaintiff asserts a Section 1983 claim against Defendant Erie County.  She alleges that her January 2010 complaint regarding her fellow officers' abuse of an inmate was constitutionally protected speech, and that the County retaliated against her as a result of this speech.

Upon entering government service, a citizen "by necessity must accept certain limitations on his or her freedom."  *Gercetti v. Ceballos*, 547 U.S. 410, 418 (1951).  However, such employees "do not check all of their First Amendment rights at the door."  *Lewis v. Cowen*, 165 F.3d 154, 158 (2d Cir. 1999).  In *Pickering v. Board of Education of Township High School District*, the Supreme Court held that public employees may not be retaliated against based upon their protected First Amendment activities.  391 U.S. 563, 568 (1968) (courts must balance the interests of the employee "in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees").

In order to prevail on a claim of First Amendment retaliation in violation of Section 1983, a public employee must establish: (1) that they engaged in a

constitutionally protected activity; (2) that they suffered an adverse employment action; and (3) that the protected activity was a "motivating factor" in the adverse employment action. *Skehan v. Village of Manaroneck*, 465 F.3d 96, 106 (2d Cir. 2006). Plaintiff alleges that her January 2010 complaint regarding her fellow officers' abuse of an inmate was protected under the First Amendment of the Constitution, and that she suffered adverse employment actions as a result of her complaint.

The County contends that because Plaintiff's speech was related to her job duties rather than a matter of public concern, it is not constitutionally protected speech sufficient to state a claim under Section 1983. In determining whether the speech at issue is constitutionally protected, a court is to consider: (1) whether the subject of the employee's speech was a matter of public concern; and (2) whether the employee spoke "as a citizen" rather than solely as an employee. *Garcetti*, 547 U.S. at 420-22, 424. In order to constitute speech on a matter of public concern, an employee's expression must be relating to any matter of "political, social or other concern to the community", rather than concerns or complaints related to the speaker's own personal situation. *Connick v. Myers*, 461 U.S. 138, 143 (1983). Importantly, "exposure of official misconduct, especially within the police department, is generally of great consequences to the public." *Garcetti*, 547 U.S. at 425. However, if the employee did not speak as a citizen, the speech is not protected by the First Amendment. *Id*. at 423.

24

"Activities required of the employee as part of [her] employment duties are not performed as a citizen if they are not the kind of activity engaged in by citizens who do not work for the government." *Id*. at 423.

In *Jackler v. Byrne*, the Second Circuit reversed the dismissal of a First Amendment retaliation claim of a probationary police officer whose probationary period was terminated after he refused to withdraw truthful statements about a fellow officer's use of excessive force during an arrest. 658 F. 3d 225 (2d Cir. 2011). The Second Circuit found that exposure of police misconduct was unquestionably a matter of public concern, and that the probationary officer's "refusal to comply with orders to retract his truthful Report and file one that was false [had] a clear civilian analogue and [the officer] was not simply doing his job in refusing to obey order." *Id*. at 241-42. *See also Dobosz v. Walsh*, 892 F.2d 135, 1141 (2d Cir. 1989) (police officer "clearly was exercising his right to free speech when he cooperated with the FBI and when he testified against his fellow officers in court").

The Second Circuit has concluded that an employee speaks "pursuant to" their duties, and therefore without First Amendment protection, when his or her conduct is "part and parcel of his concerns about his ability to properly execute his duties." *Weintraub v. Bd. Of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010). Topics that are "indispensable prerequisites" to effective performance of the speaker's "primary employment responsibility" are not entitled to First Amendment

protection.  *Id*.

Conversely, courts in this circuit have been reluctant to dismiss First Amendment retaliation complaints where a plaintiff is speaking about a matter of public concern and the speech is not directly related to the performance of their employment duties and responsibilities.  In *Matthews v. City of New York*, a police officer alleged that he was retaliated against, in violation of the First Amendment, after informing his commanding officer that a quota system existed in the police department, in violation of New York law.  2012 App. Lexis 24407 (2d. Cir. 2012).  The Second Circuit vacated the district court's order dismissing the officer's complaint.  Specifically, the Second Circuit rejected the district court's finding that a police officers' duties necessarily extend to eliminating any and all unlawful behavior, and noted that discovery was needed regarding "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two."  *Id*.  *See also Tucker v. City of New York,* 2011 U.S. Dist. LEXIS 76814 (SDNY 2011) (a city employee's complaints about a colleague's corruption were protected under the First Amendment because they did not have any bearing on the employee's ability to carry out his job duties as a poison control information specialist*).

Plaintiff has failed to establish that her January 2010 complaint was constitutionally protected speech.  Plaintiff alleges only that she discovered that three fellow officers had violently abused an inmate, and that she subsequently

reported the incident to the Erie County Sheriff's Office Professional Standards Division. She offers no allegations as to the context of the complaint, how she discovered the abuse, and whether the report was "part and parcel" of her job duties. Without more information regarding the circumstances and nature of the speech, Plaintiff's job duties and the response by the County to Plaintiff's complaint, the Court cannot find that Plaintiff's speech was constitutionally protected.

With respect to the second element of the Section 1983 claim, Plaintiff must establish that she suffered an adverse employment action. In the context of a First Amendment retaliation claim, "only retaliatory conduct that would defer a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes adverse action." *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001). Qualifying individual actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002). However, lesser actions that constitute more than a *de minimis* injury may meet the adversity threshold. *Id*. ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they meet a critical mass." (*citing Bernheim v. Litt*, 79 F.3d 318, 324-25 (2d Cir. 1996)).

Plaintiff alleges that after she reported her fellow officers abuse of an inmate she was, *inter alia*, unfairly reprimanded, excluded from meetings,

required to work excessive overtime and double duty, assigned menial and unfavorable tasks, assigned a disproportionate amount of work, and denied training opportunities that would have been beneficial to her career. Plaintiff alleges that Chief Reardon instructed her staff not to speak to her and that unwarranted disciplinary charges were filed against her. She also alleges that a decapitated rat was placed in her driveway and that an employee posted, on the Erie County Holding Center blog, a picture of a dead rat with her initials underneath it. The caption read "aka>>>JK THE RAT FUCK". The Court finds that these incidents, considered in their totality, are more than a *de minimis* injury and would defer a similarly situated individual of ordinary firmness from exercising her constitutional rights. Plaintiff has adequately pled that she suffered an adverse employment action.

Finally, a plaintiff can indirectly establish a causal connection to a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action. *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a constitutional right and an allegedly retaliatory action." *Id*. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight month gap between EEOC complaint and retaliatory action suggested a causal

relationship); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 111 (2d. Cir. 2010) (five months is not too long to find a causal relationship).

Plaintiff alleges that "within one month" after she complained about her fellow officers' abuse of an inmate, she began experiencing the adverse employment actions discussed above. The Court finds that at this early stage of the litigation, Plaintiff's allegations that the adverse actions occurred within months of her complaint are sufficient to survive a motion to dismiss.

The Court finds that although Plaintiff has satisfied two of the elements necessary to establish a *prima facie* claim of retaliation under Section 1983, she has failed to establish that she engaged in constitutionally protected speech. Thus, Plaintiff's fifth cause of action will be dismissed.

### 6. *Section 1983 as to Individual Defendants*

Plaintiff's sixth and final cause of action asserts Section 1983 retaliation claims against the individual Defendants.[7] However, Plaintiff's complaint fails to specify as to whether the individual Defendants are being sued in their official or individual capacities. To the extent that Plaintiff is attempting to sue the individual

---

[7]The caption of the second amended complaint names Timothy B. Howard, Brian D. Doyle, Michael Reardon, Robert Koch and Barbara Leary. However, in the body of the complaint Plaintiff describes the sixth cause of action as "Deprivation of Constitutional and Legal Rights, in Violation of 42 U.S.C. §1983, as to Defendant Timothy B. Howard, Brian D. Doyle and Robert Koch." In order to remedy the confusing manner of pleading, the Court's finding with respect to the sixth cause of action applies to all individuals named in both the caption and body of the second amended complaint.

Defendants in their official capacity, her claim must fail.  It is consistently held that a claim against a government official in his or her official capacity is merely another way of asserting a claim against the governmental entity that employs the official.  *Beckwith v. Erie County Water Authority*, 413 F. Supp.2d 214 (WDNY 2005); *accord Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n. 55 (1978).  *See also Baines v. Masiello*, 288 F.Supp.2d 376, 384 (WDNY 2003) ("a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent").  Any Section 1983 claim that Plaintiff seeks to assert against the individual Defendants in their official capacities is duplicative of her Section 1983 claim against the County and therefore will be dismissed.

In an action brought pursuant to Section 1983, qualified immunity shields a government official sued in his or her individual capacity from liability for damages insofar as the "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Beckwith,* 413 F.Supp. 2d 214 at 226.  Therefore, to establish personal or individual liability in a Section 1983 action, a plaintiff must establish that the individual, acting under color of state law, caused the depravation of a federal right.  *Goldberg v. Town of Rocky Hill*, 973 F.2d 70 (2d Cir. 1992).

Importantly here, in order to state a claim for relief under Section 1983

against an individual defendant that will withstand a motion to dismiss, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d. Cir. 2010). Therefore, a plaintiff asserting a Section 1983 claim against a supervisory official must sufficiently plead that the supervisor was personally involved in the constitutional deprivation. *Rivera v. Fischer*, 655 F.Supp.2d 235, 237 (WDNY 2009). *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[b]ecause vicarious liability is inapplicable to [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Johnson v. Barney*, 360 F. Appx. 199 (2d. Cir. 2010) (a complaint based upon a Section 1983 claim that does not allege the personal involvement of a defendant fails as a matter of law).

Here, Plaintiff has failed to adequately plead any of the individual Defendants' personal involvement in the depravation of her Constitutional rights. Plaintiff offers no specific facts as to the manner in which the individual Defendants were directly involved in the adverse employment actions she suffered, nor does she offer any allegations as to how they personally caused her to be deprived of a Constitutional right. Her allegations that Defendant Koch stated "we have to cover for each other" in her presence are insufficient to establish that he personally deprived her of First Amendment rights. Because the complaint does not allege the personal involvement of any individual Defendant,

31

this claim fails as a matter of law.  The Court dismisses Plaintiff's sixth cause of action. [8]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion to dismiss is denied with respect to Plaintiff's Title VII retaliation claim against Defendant Erie County (First Cause of Action) and breach of contract claim against Defendant Erie County (Second Cause of Action).

Defendants' motion to dismiss is granted with respect to Plaintiff's claim under Section 740 of the New York State Labor Law (Third Cause of Action), her claim under Section 75-b of the New York Civil Service Law (Fourth Cause of Action), her Section 1983 claim against Defendant Erie County (Fifth Cause of Action), and her Section 1983 claim against the individual Defendants (Sixth Cause of Action).

The case will be referred to a Magistrate Judge for further proceedings.


SO ORDERED.

---

[8]  Plaintiff's request for punitive damages is also dismissed since Plaintiff's punitive damages claim can only be asserted against the individual Defendants in their individual capacity pursuant to Section 1983.  *New Windsor Volunteer Ambulance Corps., Inc. V. Meyers*, 442 F.3d 101 (2d. Cir. 2006).

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: February 20, 2013